CHAPMAN DEHONEY'S EXECUTOR *v.* SUSAN C. DEHONEY ET AL.

Lands and Conveyances—Special Warranty—Estoppel—As to Devisees Under Will—Fraudulent Conveyance.

A conveyance by deed from father to son, with a warranty of title against "himself, his heirs and all persons claiming under him," will operate as an estoppel, not only as to the claims of the grantor himself, but against his devisees, heirs and representatives, and is not subject to a collateral attack except for fraud, or force in the procurement thereof.

APPEAL FROM ADAIR CIRCUIT COURT.

May, 22, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

In 1826 two patents issued to the heirs of Joseph Chapman on military warrants, for two thousand acres of land each, lying and being in the district set apart for the officers and soldiers of the Virginia State line, south of the Tennessee River. One of said tracts is situated in the County of Hickman, and the other as appears, is located in Marshall County, but of the last named tract nothing need be further said as it is not in controversy.

Mrs. Jane DeHoney, the mother of Chapman DeHoney, was a daughter and heir of Joseph Chapman, and as such, entitled to one-fifth of the land embraced in said patents, at her death she left five sons and one daughter, her only children and heirs at law, to whom her title in said lands descended.

On the 15th of September, 1838, Thomas Dehoney, James Dehoney, Lucy Dehoney, Peyton Dehoney and Joseph Dehoney, children and heirs of Mrs. Jane Dehoney, sold, by executory contract, to their brother Chapman Dehoney, for a valuable consideration, "all their right, title, interest and claim to an undivided fifth interest in said 4,000 acres of land covered by the patents aforesaid. So that by that *contract* Chapman Dehoney *acquired an equity of 5-6 of an* undivided fifth, and being entitled to 1-6 in his own right, owned the entire one-fifth of said lands.

On the writing evidencing the contract of sale from his brothers and sister, to him, is the following endorsement, viz:

"I assign the within article of an agreement to Thomas R. Dehoney, January, the 25th, 1847."

"Chapman Dehoney."

In August, 1854, Chapman Dehoney departed this life in Adair County, where he resided, having first made and published his last will and testament in which he disposed of a large estate, consisting of lands, slaves and personalty, and appointed his son, George W. Dehoney and three of his sons-in-law his executors. His will was probated in the proper court, on the 4th of September, 1854, and the executors therein named qualified, subsequently they all declined to act, except George W. Dehoney who alone is the acting executor.

On the 30th of June, 1847, Chapman Dehoney executed a deed to Thomas R. Dehoney, his son, for the undivided fifth of said 4,000 acres of land, setting out and reciting in the deed with great

26

particularlity the nature of his title, of whom he purchased, his vendors, his brothers and sister, all being named in the caption as grantors, and they acknowledge in the deed the payment of the consideration to them respectively, by said Chapman Dehoney, describing each tract according to the patent boundaries, and then conclude as follows:

> "To have and to hold the said one undivided fifth part of said two tracts of land, each containing two thousand acres, more or less, to the said Thomas Dehoney, his heirs and assigns forever, to their only proper use, benefit and behalf.
>
> "And the parties of the first part hereby covenant and agree to and with the said Thomas R., that they will forever warrant and defend the title to said undivided fifth part of said two tracts of land against the claim, or claims, of themselves, or their heirs forever, but not against the claim, or claims, of any other person, or persons, whatsoever."

This deed signed by the said Chapman Dehoney, was by him acknowledged before a deputy clerk of Adair county court, October 9, 1847, signed and acknowledged by his widow after his death, and signed and acknowledged by his brothers and their wives, except one, and by his sister, the vendors of Chapman Dehoney, on the 13th day of August, 1857, before the county court clerk of Adair county, and by him certified to the clerk of the Hickman County Court, and the same is properly recorded in his office.

On the 24th of March, 1865, this action was brought by George W. Dehoney, executor of Chapman Dehoney, deceased, in the Adair circuit court, by a special *act of the legislature of Kentucky,* conferring jurisdiction on that court for the purpose, against Susan C. Dehoney, widow, and Thomas Milton Dehoney, infant son and only heir of Thomas R. Dehoney, he having died, and others, to have the deed of said Thomas R. Dehoney cancelled, and to compell them to release and convey said land to said executor, for the benefit of the devisees of C. Dehoney, deceased. And if that cannot be done, then he asks that Thomas R. Dehoney's representative shall be compelled to account for the value of said land, as an advancement to him, in the general distribution of testator's estate.

The court below refused the relief sought, and dismissed the

petition with costs, and that judgment the executor of C. Dehoney now seeks to reverse.

Thomas R. Dehoney perfected his title by procuring partition of the land, in Hickman, to be made amongst those entitled thereto, had the one-fifth set apart to him by metes and bounds, and a conveyance of the same by commissioners, and was in possession at his death, and his widow and heir are still in possession. The consideration in the deed from C. Dehoney &c. to Thomas R. Dehoney is love and affection.

The grounds relied upon in the petition for setting aside the deed are, that the assignment of the bond of 1838 and the execution of the deed were only made to authorize Thomas R. Dehoney to go to Hickman county to clear the title to the land from disputes, to reduce it to possession, and to see to it clear, but that it never was his intention to invest the grantee with the absolute right to the land, as evidenced by the fact that soon after the assignment of the bond the testator took possession of it, and retained it until his death, and that the deed remained in the office of the clerk of the Adair county court from the 9th of October, 1847, till the 13th of August, 1857, without any effort to complete it and to have it recorded in the county where the land is located, and without claim being made to it by the grantee, that he is not charged by the testator with its value, on a book of advancements kept by him with great care and particularity, and called by him his "Family Book," and that his son Thomas R. is a devisee under the will of testator and he cannot claim under and against the will.

It is alleged in a very long amended petition that the defendants, Susan C. Dehoney and Milton Dehoney, heirs of said Thomas R. Dehoney, claim said land as their own "under the wrongful and fraudulent deed herein mentioned," but there is not, in any of the volumnious pleading of appellant, a direct charge that the deed was procured by fraud, or force, on the part of Thomas R. Dehoney. And the allegation that, at the time the assignment and deed were made to him, his father was, on account of physical infirmity, incapable of attending to the business, is not only not sustained by evidence, but is most successfully disproved. He made a canvass for the legislature in 1847 and in 1848, in Adair county, and was elected both years, and was an active, vigilant and most successful business man. Nor was appellant in Mexico at the time, as alleged, as an excuse for the conveyance to Thomas instead of to appellant.

Chapman Dehoney conveyed by his deed the whole undivided fifth in said land, to his son Thomas R. Dehoney, and warrants the title against himself, his heirs and all persons claiming under him, and the evidence of title of appellees is of so high a character that it operates as an estoppel, not only against the grantor himself, but against his devisees, heirs and representatives, unless the deed was obtained by fraud, or force, such as to render it void. Jones vs. Prewitt &c., 3 A .K. Mar., 302, 3; Pitzhu vs. Tyler, 9 B. M., 559; Upshaw vs. McBride &c,. 10 B. M., 202.

We have already seen that there is neither allegation nor proof of fraud, force, or even mistake, in obtaining the deed to Thomas R. Dehoney.

Nor error is perceived in sustaining, nor in overruling, exceptions to depositions. And even if there was no evidence that T. R. Dehoney had not paid an additional consideration for the land, besides that recited in the deed, which however appears from the statements of said T. R. Dehoney, asked for and proved by appellant, the will itself prohibits an accounting for the value of the land as an advancement.

After a careful investigation of the case, we are unable to perceive any error in the judgment, wherefore the same is affirmed.

*Garnett & Baker, Bramlett & Son, Harlan, for appellant.*

*Caldwells, for appellees.*